

January 23, 2017

**Joseph P. Wodarski, Esq.**
914.872.7273 (direct)
Joseph.Wodarski@WilsonElser.com

**VIA ECF**

Honorable Judge P. Kevin Castel
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
500 Pearl Street
New York, NY 10007

| | | | |
|---|---|---|---|
| Re: | Case Caption | : | *Del-Orden v. Eataly America, Inc.* |
| | Docket No. | : | 1:16-CV-2361 |
| | Our File No. | : | 14148.00122 |

Dear Judge Castel:

The undersigned represents defendant Eataly America, Inc. ("Eataly") in the captioned matter. We are writing pursuant to Rule 4(A)(1) of Your Honor's Individual Rules of Practice to request a pre-motion conference to be held to discuss the defendant's proposed motion for summary judgment. The next scheduled conference in this case is on February 24, 2017.

Eataly intends to move for summary judgment because plaintiff's cause of action fails as a matter of law. Eataly will move to demonstrate that a website on the internet is not a place of public accommodation. *See* Access Now, Inc. v. Southwest Airlines, Co., 227 F.Supp.2d 1312, 1318 (Dist. Ct. Fl. 2002) ("In interpreting the plain and unambiguous language of the ADA, and its applicable federal regulations, the Eleventh Circuit has recognized Congress' clear intent that Title III of the ADA governs solely access to physical, concrete places of public accommodation." Plaintiff's reliance on Pallozzi v. Allstate Life Ins. Co., 198 F.3d 28 (2d Cir, 1999) is unsupported, as Pallozzi dealt with the issue of whether an insurance company selling insurance policies is governed under the ADA, and its decision and reasoning were heavily influenced by the specific issues of the insurance industry and the legislative intent with regards to the insurance industry. For example, the court supported their decision with the finding that under Title V of the ADA, Section 501(c), there is a safe harbor provision which asserts that Titles I through III "shall not be construed to prohibit or restrict-(1) an insurer from underwriting risks, classifying risks, or administering such risks that are based on or not inconsistent with State law…." Pallozzi at 30. The court then reasoned that if Title III did not apply to insurance policies, this safe harbor provision would not be needed. Id. Therefore, the Pallozzi decision should be limited to the insurance industry, and not, as plaintiff now claims, applied without limits or boundaries to all industries that have a website.

1133 Westchester Avenue • White Plains, NY 10604 • p 914.323.7000 • f 914.323.7001
150 East 42nd Street • New York, NY 10017 • p 212.490.3000 • f 212.490.3038

Albany • Baltimore • Boston • Chicago • Connecticut • Dallas • Denver • Garden City • Houston • Kentucky • Las Vegas • London • Los Angeles • Miami
Milwaukee • New Jersey • New York • Orlando • Philadelphia • San Diego • San Francisco • Virginia • Washington, DC • West Palm Beach • White Plains
Affiliates: Berlin • Cologne • Frankfurt • Munich • Paris

**wilsonelser.com**

6311828v.1

In addition, neither the ADA nor the corresponding regulations provide for the regulation of internet and websites. Plaintiff, in their own pre-motion letter, seeks to invoke the WCAG 2.0 guidelines to demonstrate the website's lack of accessibility. However, plaintiff cites to no authority to adopt the WCAG 2.0 under Title III of the ADA, only stating "[A]pplying the WCAG 2.0 Guidelines to this matter…" without identifying any support for their position. Furthermore, Plaintiff's complaint is also lacking in authority, stating simply that there are guidelines to make websites accessible, and that defendants are liable for not taking the steps set forth in those guidelines. The problem is that the guidelines cited by the plaintiff are implemented by the Web Accessibility Initiative ("WAI"), a standards organization that has no relation to the ADA. *See* Complaint, ¶39. In his complaint, plaintiff also cited to Section 508 of the Rehabilitation Act, a law also unrelated to the ADA and intended to govern federal government bodies only. *Id.*

In the original joint letter to the court submitted by both parties, plaintiff stated the following in a footnote:

> In numerous settlements and consent decrees entered by the Department of Justice (DOJ) with private businesses, WCAG 2.0 has become the accepted standard for web accessibility. Most recently in May 2016, the DOJ issued a *Supplemental Advance Notice Of Proposed Rulemaking* (SANPRM) for state and local websites, where the DOJ adopted WCAG 2.0 AA as the accessibility standard for websites. WCAG 2.0 is the internationally recognized benchmark for Web accessibility. Several states within the United States, including Alaska, Georgia, Hawaii and Minnesota, are using WCAG 2.0 as their standard for web accessibility. In other states such as New York, California, Florida, Illinois, Maryland and Texas, the web accessibility standards are based on section 508 (which are currently based on WCAG). In New York City, government websites are required to adopt an accessible website protocol that incorporates either WCAG 2.0 AA or Section 508 of the Rehabilitation Act.

The plaintiff's footnote actually supports defendant's position that there is no legal authority on website accessibility under the ADA that is applicable to private businesses. The footnote goes into great length about the Department of Justice's efforts to attain a website accessibility guideline, but neglected to mention that SANPRM was for Title II of the ADA governing state and local governments. Plaintiff refers to it as "state and local websites" in an attempt to create an illusion that it would apply to non-governmental bodies as well. Plaintiff also identifies SANPRM as setting WCAG 2.0 as the benchmark for website accessibility. It does not.

In fact, this very SANPRM was issued contemporaneously with the *Statement Regarding Rulemaking on Accessibility of Web Information and Services of State and Local Government Entities* letter released by the DOJ on April 29, 2016, stating explicitly that the DOJ withdrew its *Notice of Proposed Rulemaking* and instead issued the SANPRM in order to solicit public opinion of setting forth guidelines into making state and local government offices ADA compliant.

Therefore, the defendant will seek to establish that as a matter of law, the lack of any guidelines or regulations governing the accessibility of the internet and website is definitive proof that Title III of the ADA was not intended to govern the accessibility of websites. Plaintiff has not, through extensive discovery, come up with any evidence to support a finding that any guideline has been promulgated under Title III of the ADA to regulate the accessibility standards of internet and websites. Therefore, even when viewing the facts in a light most favorable to plaintiff, their claims under Title III of the ADA must fail.

Thank you for your attention to this matter.


Very truly yours,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

Joseph P. Wodarski
JPW/jwg